UNITED STATES of America,
Appellee,

v.

David N. SEARLE, Jr., Defendant–Appellant.

Docket No. 02–1271.

United States Court of Appeals,
Second Circuit.

May 6, 2003.

James F. Greenwald, Assistant Federal Public Defender, Syracuse, NY, for Appellant.

Brenda K. Sannes, Assistant United States Attorney, Syracuse, NY, for Appellee.

Present: VAN GRAAFEILAND, MINER, and POOLER, Circuit Judges.

### SUMMARY ORDER

**THIS SUMMARY ORDER WILL NOT BE PUBLISHED IN THE FEDERAL REPORTER AND MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY TO THIS OR ANY OTHER COURT, BUT MAY BE CALLED TO THE ATTENTION OF THIS OR ANY OTHER COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the United States Courthouse, Foley Square, in the City of New York, on the 6th day of May, two thousand and three.

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED.**

David N. Searle, Jr., appeals from a judgment principally sentencing him to (1) serve a term of 235 months imprisonment and (2) pay $17,582.85 in restitution to the victims of his crimes.

Searle pleaded guilty to three counts of receipt of child pornography in violation of 18 U.S.C. § 2252(a)(1)(A) and to four

counts of causing the production of child pornography in violation of 18 U.S.C. § 2251(a). Searle's accomplice was "T," the mother of the two victimized children. Six of the seven counts to which Searle pleaded involved T's six-year-old daughter, and one involved her ten-year-old son. The seven counts charged conduct occurring on seven different dates. In June 1999, T died as the result of a drug overdose and her husband, the children's father, assumed their sole custody. In September 1999, he discovered a videotape depicting sexual contact between T and their son. Their daughter was taking pictures "for David." After viewing the tape, the father found he could no longer care for the children because "he could no longer touch them, hold them, hug them, like a parent should a child." The children's paternal aunt and uncle, who were childless, then assumed custody.

At sentencing on April 24, 2002, Chief Judge Scullin rejected defendant's contention that the counts of conviction should be grouped. The judge found: "[The counts] are separate and distinct activities even though they involve the same victims just as bank robbery or burglary would involve the same location, would be separate each time it was committed, separate crime." Thus, in applying U.S.S.G. § 3D1.4, he added five points to Searle's offense level to account for the seven different counts of conviction. With various other adjustments, Searle's total offense level was 35. Because Searle was in criminal history category II, the resulting Guidelines imprisonment range was 188 to 235 months. Chief Judge Scullin sentenced Searle to 235 months imprisonment.

The court also directed Searle to pay $2,182.97 to the children's guardians for counseling expenses they had incurred. In addition, Chief Judge Scullin asked the guardians for more information on other expenses they had incurred for the children and noted that the restitution order might be amended. On May 9, 2002, the probation office submitted a letter to the court detailing approximately $50,000 claimed by the guardians as restitution. On June 3, 2002, the court amended its restitution order to direct the payment of $25,628.38 for counseling and transportation to counseling, the cost of remodeling the guardians' porch so that the children could have separate bedrooms, and the cost of a 1997 Chevrolet Blazer. Searle's objection to the inclusion of the remodeling and of the Blazer caused the court to hold an evidentiary hearing.

After the hearing, the court found that the "guardians purchased a vehicle for the purpose of transporting the minor victims of this offense to and from counseling and the bus stop in inclement weather and to take the victims on family vacations." The court also found that the renovations were necessary "to provide separate bedrooms for each victim" and that "there is a direct connection between the victims' need to move in with their guardians and the discovery of this offense." However, the court awarded only half the cost of the Blazer, which resulted in a total restitution award of $17,582.85.

Searle filed a timely appeal and argues: (1) the district court was required to group the six counts involving T's daughter; (2) the court erred by ordering restitution for the remodeling and for the new car because they were not necessary expenses within the meaning of 18 U.S.C. § 2259(b)(3)(C) and were not losses proximately caused by the offenses of conviction within the meaning of 18 U.S.C. § 2259(b)(3)(F).

■ For his grouping argument, Searle relies on U.S.S.G. § 3D1.2(b). Section 3D1.2 instructs that counts are to be grouped if they "involv[e] substantially the

same harm." Two or more counts involve "substantially the same harm" if they "involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan." U.S.S.G. § 3D1.2(b). However, this Guideline "does not authorize the grouping of offenses that cannot be considered to represent essentially one composite harm (*e.g.*, robbery of the same victim on different occasions involves multiple separate instances of fear and risk of harm, not one composite harm)." U.S.S.G. § 3D1.2, cmt. n. 4. For the same reason, two counts of raping the same person on different occasions are not grouped. *Id.* Because T's daughter was harmed separately by the conduct embodied in each count of conviction, the district court properly declined to group the counts. *Cf. United States v. Miller*, 993 F.2d 16, 21 (2d Cir.1993) (finding "no error" in district court's finding that threatening letters that were "arguably part of a common scheme of harassment" nonetheless "inflicted separate psychological harm").

18 U.S.C. § 2259 provides that a person convicted of sexual exploitation of a child must pay restitution. 18 U.S.C. § 2259(a). The perpetrator must pay "the full amount of the victim's losses" including medical services, transportation, and temporary housing as well as "any other losses suffered by the victim as a proximate result of the offense." 18 U.S.C. § 2259(b)(3). Searle first argues that neither transforming the existing porch into a utility room, so that the existing utility room could be used as a bedroom, nor the purchase of the Blazer was proximately caused by his conduct. If these expenditures were necessary at all, he argues, they were necessitated by the children's father's abandonment, an action that was not a reasonably foreseeable consequence of Searle's conduct. We disagree. Because the chil-

dren's father ceased to care for them shortly after discovering the pornographic videotape involving his son that was made "for David," the district court reasonably concluded that the defendant's actions proximately caused the children's loss of their home and father. *Cf. United States v. Crandon*, 173 F.3d 122, 126 (3d Cir. 1999) (holding that sexual exploitation by defendant proximately caused victim's hospitalization and related expenses even though she may have suffered from a pre-existing emotional condition that had gone untreated).

■ At the time the guardians purchased the Blazer, they owned a pick-up truck and a four-seat Mercury Mystique. The pick-up truck could accommodate only three passengers and could not be driven by the children's aunt as it had a standard transmission. Therefore, the guardians used the pick-up truck as a trade-in for the Blazer. In addition, the Mystique was not adequate during the winter for going up and down the mountain on which the guardians lived. The guardians testified that they purchased the Blazer both to transport the children down the mountain to the school bus stop and to take them on camping vacations. Searle argues that the Blazer was not necessary transportation because the guardians already owned the pick-up truck and the Mystique. The district court however credited the guardians' explanations for why they needed the Blazer. Because this factual finding is not clearly erroneous, we cannot set it aside. *United States v. Porter*, 90 F.3d 64, 68 (2d Cir.1996).

■ Searle argues that remodeling the front porch was unnecessary because the utility room could have been moved to the basement. We hold that the district court did not clearly err in finding the remodeling expense to be necessary, especially

because some work would have been necessary to move the utility room to the basement and to turn the utility room into a bedroom.

◼ Finally, Searle contends that both the Blazer and the remodeling were inappropriate subjects for restitution because the guardians moved after incurring these expenses, which meant they no longer used the utility room and no longer needed to transport the children up and down the mountain. We reject this argument from hindsight. At least absent proof of advance knowledge of a change of circumstances, the necessity of the guardians' purchase must be judged as of the time they made them.