**UNITED STATES of America,**

v.

**Jason CHOW, Defendant.**

**Case No. 09–CR–165 (KMK).**

United States District Court,
S.D. New York.

Nov. 22, 2010.

Nicholas L. McQuaid, U.S. Attorney's Office, Southern District of New York, White Plains, NY, for Government.

Dominick J. Porco, Esq., Scarsdale, NY, for Defendant.

## OPINION AND ORDER

KENNETH M. KARAS, District Judge:

This matter is before the Court on the Government's request for restitution, pursuant to 18 U.S.C. § 2259, on behalf of "Amy" and "Vicky," who are two of the children depicted in child pornography found in Defendant Jason Chow's ("Defendant") computer and files.[1] For the reasons that follow, the request for restitution is denied.

### I.  Background

Defendant was originally indicted on February 24, 2009, for attempting to receive child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(B) and (b)(1). (Gov't Sentencing Ltr. to the Ct. dated June 30, 2010 ("Gov't Ltr.") 2.) On November 5, 2009, Defendant waived indictment and agreed to the filing of a two-count superseding information, which repeated the original charge and additionally charged Defendant with possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2). (*Id.*) Defendant pled guilty on November 5, 2009, to both counts. (*Id.*) On July 6, 2010, the

---

**1.** "Amy" and "Vicky" are pseudonyms used to protect the identities of the individuals depicted in the images at issue. The Court will refer to the individuals requesting restitution by these names.

Court sentenced Defendant to eighty-four months' imprisonment, followed by five years' supervised release, concurrent on both counts. On October 5, 2010, the Court entered the Judgment but did not impose any restitution. This Opinion explains why no restitution was ordered.

Among the child pornography images and video clips found on Defendant's hard drive and CDs were two series, commonly referred to as the "Misty" series and the "Vicky" series. The Government requested restitution on behalf of Amy—the subject of the "Misty" series—in the amount of $3,367,854.00, for future counseling expenses, lost and reduced income, and expert witness and attorney fees, and on behalf of Vicky—the subject of the "Vicky" series—in the amount of $2,851.20, for past and anticipated counseling expenses. (Gov't Ltr. 4.) Defendant submitted a letter to the Court opposing an award of restitution. (Def. Ltr. to the Ct. dated June 30, 2010 ("Def. Ltr.").)

Amy and Vicky both submitted documentation demonstrating that they continue to suffer from the abuse they endured during the making and production of the pornographic images when they were children. (Gov't Ltr. 4.) Specifically, they understandably claim that they are continually harmed by the knowledge that people can continue to view the images of their abuse on the Internet, and the fear that someone will recognize them from these pictures. (*Id.*)

## II. Discussion

Restitution is sought in this case pursuant to 18 U.S.C. § 2259, which requires courts to impose restitution to victims for their losses as a result of, inter alia, certain child pornography crimes.[2] As noted, Defendant pled guilty to violations of 18 U.S.C. §§ 2252A(a)(2)(B), (a)(5)(B), (b)(1), and (b)(2), which are within Chapter 110 of

---

2. This statute provides:

> (a) In general.—Notwithstanding section 3663 or 3663A, and in addition to any other civil or criminal penalty authorized by law, the court shall order restitution for any offense under this chapter.
> (b) Scope and nature of order.—
> (1) Directions.—The order of restitution under this section shall direct the defendant to pay the victim (through the appropriate court mechanism) the full amount of the victim's losses as determined by the court pursuant to paragraph (2).
> (2) Enforcement.—An order of restitution under this section shall be issued and enforced in accordance with section 3664 in the same manner as an order under section 3663A.
> (3) Definition.—For purposes of this subsection, the term "full amount of the victim's losses" includes any costs incurred by the victim for—(A) medical services relating to physical, psychiatric, or psychological care; (B) physical and occupational therapy or rehabilitation; (C) necessary transportation, temporary housing, and child care expenses; (D) lost income; (E) attorneys' fees, as well as other costs incurred; and (F) any other losses suffered by the victim as a proximate result of the offense.
> (4) Order mandatory.—(A) The issuance of a restitution order under this section is mandatory. (B) A court may not decline to issue an order under this section because of—(i) the economic circumstances of the defendant; or (ii) the fact that a victim has, or is entitled to, receive compensation for his or her injuries from the proceeds of insurance or any other source.
> (c) Definition.—For purposes of this section, the term "victim" means the individual harmed as a result of a commission of a crime under this chapter, including, in the case of a victim who is under 18 years of age, incompetent, incapacitated, or deceased, the legal guardian of the victim or representative of the victim's estate, another family member, or any other person appointed as suitable by the court, but in no event shall the defendant be named as such representative or guardian.
> 18 U.S.C. § 2259.

U.S.Code Title 18, the chapter to which § 2259 applies. *See United States v. Berk,* 666 F.Supp.2d 182, 185 (D.Me.2009) (finding it "undisputed" that a conviction for possessing child pornography constituted a Chapter 110 violation to which restitution could apply). Thus, in deciding whether to award restitution in this case, the Court must determine: (1) if Amy and Vicky are victims within the meaning of the statute; (2) if the statute contains a proximate cause requirement; (3) if proximate cause is required, whether the Government has shown that the damages claimed by Amy and Vicky were proximately caused by Defendant's crime; and (4) if proximate cause is established, the proper amount of damages. The Government bears the burden of proving the propriety and amount of restitution by a preponderance of the evidence. *See* 18 U.S.C. § 3664(e); *United States v. Pickett,* 387 Fed.Appx. 32, 35–36 (2d Cir.2010) (summary order); *United States v. Julian,* 242 F.3d 1245, 1248 (10th Cir.2001); *United States v. Crandon,* 173 F.3d 122, 126 (3d Cir.1999).

### A. Victim

The statute defines a "victim" as "the individual harmed as a result of a commission of a crime under [Chapter 110]." 18 U.S.C. § 2259(c). Every court to consider this issue agrees that the persons depicted in child pornography images are victims of those who possess the images. Indeed, "[c]ourts have regularly recognized three distinct harms visited upon those who were abused in child pornography as a consequence of the later distribution or possession of such images." *United States v. Church,* 701 F.Supp.2d 814, 820 (W.D.Va. 2010); *see also United States v. Planck,* 493 F.3d 501, 505 (5th Cir.2007) (finding that possession of child pornography is a "crime[ ] perpetrated against a minor" that "victimize[s] [the child] in three distinct ways"); *United States v. Norris,* 159 F.3d 926, 929–30 (5th Cir.1998) (holding that children depicted in child pornography are victims of the crime of receipt of child pornography in at least three ways).

The first harm is the perpetuation of the initial abuse by dissemination of the images, caused by the knowledge that there is a permanent record of the abuse in circulation that can cause emotional trauma and damage with each subsequent distribution or viewing. *See United States v. Paroline,* 672 F.Supp.2d 781, 786 (E.D.Tex.2009), *mandamus denied sub nom. In re Amy,* 591 F.3d 792 (5th Cir. 2009); *see also New York v. Ferber,* 458 U.S. 747, 759, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982) (noting that "the materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation"). Second, as "the mere existence of the child pornography invades the privacy of the child depicted," the recipient or possessor "victimizes the child by perpetuating the invasion of the child's privacy." *Paroline,* 672 F.Supp.2d at 786; *see also United States v. Shutic,* 274 F.3d 1123, 1126 (7th Cir.2001) (noting that "the possession, receipt and shipping of child pornography directly victimizes the children portrayed by violating their right to privacy" (internal quotation marks omitted)). Third, "the consumer of child pornography instigates the original production of child pornography by providing an economic motive for creating and distributing the materials." *Church,* 701 F.Supp.2d at 821 (internal quotation marks omitted); *see also Osborne v. Ohio,* 495 U.S. 103, 110, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990) ("[T]he advertising and selling of child pornography provide an economic motive for and are thus an integral part of the production of [child pornography]." (first alteration in original) (internal quotation marks omitted)). Therefore, "the victim-

ization of a child depicted in pornographic materials flows just as directly from the crime of knowingly receiving child pornography as it does from the arguably more culpable offenses of producing or distributing child pornography." *Norris*, 159 F.3d at 930. Thus, Amy and Vicky, as persons depicted in the child pornography images Defendant possessed, are victims of Defendant's offenses within the meaning of § 2259.

### B. Causation Requirement Under § 2259

■ The Court must next determine whether § 2259 requires the Government to show that the Defendant's conduct proximately caused the losses for which the victims are seeking restitution. Section 2259(b)(3)(F) provides recovery for "any other losses suffered by the victim as a proximate result of the offense," while the other listed types of recoverable loss do not specifically include a proximate cause requirement. However, the Supreme Court has held that " '[w]hen several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all.' " *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 250, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (quoting *Porto Rico Ry., Light & Power Co. v. Mor*, 253 U.S. 345, 348, 40 S.Ct. 516, 64 L.Ed. 944 (1920)). Following this principle, almost every court to have considered causation under § 2259 has found the "proximate result" language in the catchall provision to apply equally to the other enumerated categories of loss, and therefore has held that § 2259 requires a showing of proximate cause. *See, e.g., Amy*, 591 F.3d at 794 ("Courts across the country have followed and applied the proximate-cause requirement in imposing restitution under Section 2259.");

*United States v. Doe*, 488 F.3d 1154, 1159–60 (9th Cir.2007) (noting that § 2259 requires a causal connection between the offense of conviction and the victim's harm, though recognizing that causation need not be mathematically precise); *United States v. Laney*, 189 F.3d 954, 965 (9th Cir.1999) (finding that § 2259 "incorporates a requirement of proximate causation" based on its definition of "victim" and the language in the catchall provision); *Church*, 701 F.Supp.2d at 825–26 ("Under any plausible reading of § 2259, the plain language of the statute requires causation."); *United States v. Aumais*, No. 08–CR–711, 2010 WL 3033821, at *2 (N.D.N.Y. Jan. 13, 2010) ("Every circuit to consider the causation requirement of § 2259 has required a showing of proximate cause."); *Paroline*, 672 F.Supp.2d at 791 (holding that "an award of restitution under section 2259 is appropriate only for the amount of the victim's losses proximately caused by the defendant's conduct"); *Berk*, 666 F.Supp.2d at 188 ("[T]he plain language of the statute clearly requires that losses—to be recoverable in restitution—must have been proximately caused by the acts which constitute the offense of conviction."). *But see United States v. Staples*, No. 09–CR–14017, 2009 WL 2827204 (S.D.Fla. Sept. 2, 2009) (awarding restitution to victim without discussing whether proximate cause was required under the statute or met in the case). In a recent case, the Second Circuit held that a defendant convicted of videotaping and photographing two minor females in sexually explicit positions and enticing them to engage in sexually explicit conduct could be liable under § 2259 for reasonably estimated future medical and counseling expenses of the two minors, but remanded the case to the district court to explain its calculation of the victims' future expenses. *See United States v. Pearson*, 570 F.3d 480, 486–87 (2d Cir.2009) (per

curiam). *Pearson,* however, did not address the extent to which § 2259 requires the Government to establish proximate cause for all injuries to victims of possession of child pornography distributed on a grand scale. The Court nonetheless agrees with the vast weight of judicial authority that § 2259 contains a proximate cause requirement. Thus, in order to award restitution in this case, the Government is required to show that Defendant's conduct proximately caused the losses for which the victims are seeking restitution.

### C. *Causation in this Case*

█ Proximate cause is defined as "[a] cause that directly produces an event and without which the event would not have occurred." Black's Law Dictionary 234 (8th ed. 2004). As noted above, the Second Circuit has yet to address whether proximate cause exists in cases, such as this one, involving receipt and/or possession of widely distributed child pornography. However, in *Pearson,* the Second Circuit remanded a sentence (involving production and transporting of photographs and videos by the defendant, in addition to possession of these materials) because the district court did not explain how it calculated the victim's future expenses. *Pearson,* 570 F.3d at 487. Furthermore, the *Pearson* court noted that "an order of restitution for future losses may be inappropriate [where] the amount of loss is too difficult to confirm or calculate." *Id.* at 486 (alteration in original) (internal quotation marks omitted). Of course, "[b]ecause the determination of an appropriate restitution amount is by nature an inexact science, § 2259 does not impose a requirement of causation approaching mathematical precision." *Church,* 701 F.Supp.2d at 830–31 (internal quotation marks and citation omitted). Nevertheless, a court must still be able to reasonably determine what amount of quantifiable harm was caused to a particular victim by a particular defendant's possession of the materials. *See Doe,* 488 F.3d at 1160 (explaining that a § 2259 restitution order will be upheld "if the district court is able to estimate, based upon facts in the record, the amount of victim's loss with some reasonable certainty"). Thus, a district court must be able to "make explicit findings of fact supporting its calculation of the full amount of the victim's losses, as delineated in § 2259(b)(3), which were proximately caused by the Defendant's offense." *Church,* 701 F.Supp.2d at 832 (internal quotation marks omitted); *see also Pearson,* 570 F.3d at 487 (faulting sentencing court for not explaining determination of future damages of victims).

The majority of courts that have considered this issue have concluded that proximate cause cannot be established in child pornography possession cases such as this one, including in cases involving these same victims. *See United States v. Rowe,* No. 09–CR–80, 2010 WL 3522257, at *4 (W.D.N.C. Sept. 7, 2010) (holding that because her original abuser inflicted upon Vicky all of her physical harm, and a significant portion of her psychological harm, "it would be absurd to hold, as the Government suggests, the Defendant jointly and severally liable for the entire amount of Vicky's damages"); *United States v. Solsbury,* 727 F.Supp.2d 789, 795–96 (D.N.D. 2010) ("The Court is unable to determine, with any reasonable certainty, what losses are attributable to the egregious acts of sexual abuse committed by Vicky's father, what losses are attributable to the countless others who have received, distributed, or possessed the images, or what losses were caused by this particular defendant's conduct in possessing the pornographic images in North Dakota."); *Church,* 701 F.Supp.2d at 832 (holding that the court

was unable "to establish as fact[ ] that the victim has suffered any particular loss as a result of this particular Defendant's possession of her image," where the Government was unable to point to any increased loss to the victim caused by the defendant); *United States v. Woods*, 689 F.Supp.2d 1102, 1112 (N.D.Iowa 2010) (holding that none of the "evidence before the court permits the court to discern with any reasonable certainty which of Vicky's losses were caused by Defendant's conduct"); *United States v. Faxon*, 689 F.Supp.2d 1344, 1357–58 (S.D.Fla.2010) (finding that where Amy and Vicky had no knowledge of the defendant in that case, the defendant's crime could not have reasonably caused the continued psychological trauma to Amy or Vicky, as their trauma would occur irrespective of the defendant's conduct); *United States v. Scheidt*, No. 07–CR–293, 2010 WL 144837, at *4 (E.D.Cal. Jan. 11, 2010) (finding that the Government could not prove the amount of harm the defendant caused to Amy and Vicky separate from the total amount of their harm); *United States v. Van Brackle*, No. 08–CR–042, 2009 WL 4928050, at *5 (N.D.Ga. Dec. 17, 2009) (holding that the court could not reasonably estimate what portion of Amy's and Vicky's harm was proximately caused by the defendant's receipt of their images, "as opposed to the initial abuse or unknown other acts of receipt and distribution that occurred before and independent of [the] defendant's act"); *Paroline*, 672 F.Supp.2d at 791 ("A victim is not necessarily entitled to restitution for all of her losses simply because the victim was harmed and sustained some lesser loss

as a result of a defendant's specific conduct."); *Berk*, 666 F.Supp.2d at 191 ("[T]he Court finds that there is nothing in the record showing a specific loss that was proximately caused by this particular [d]efendant's possession of the victims' images."); *United States v. Simon*, No. 08–CR–907, 2009 WL 2424673, at *7 (N.D.Cal. Aug. 7, 2009) (finding that the Government could not show that any specific injury to Amy was caused by the defendant's possession of her images).

A few courts have found in similar situations that the proximate cause requirement was met. *See, e.g., United States v. Baxter*, 394 Fed.Appx. 377, 379 (9th Cir. 2010) (unpublished decision) (summarily concluding that "[t]he United States met its burden of establishing proximate cause by showing how Vicky's harm was generally foreseeable to casual users of child pornography like [the defendant]"); *United States v. Monzel*, No. 09–CR–243, 746 F.Supp.2d 76, 87–88, 2010 WL 4261429, at *9–10 (D.D.C. Oct. 22, 2010) (finding that, under the "harm within the risk" approach adopted in the Restatement (Third) of Torts § 29 (2010), "the Government has demonstrated that the victims' alleged losses were proximately caused by [the defendant's] possession of these images");[3] *United States v. Hardy*, 707 F.Supp.2d 597, 614 (W.D.Pa.2010) (finding that because the defendant's distribution contributed to the circulation of Amy's images, Amy had shown that the defendant's conduct was a "substantial factor in her psychological harm and economic losses," and therefore caused part of her harm);[4] *Au-*

---

3. The Court notes that the *Monzel* case was decided after judgment had been entered in the present case.

4. In finding that proximate cause was established, the *Hardy* court also analogized causation in child pornography to the republication of defamatory material. *See Hardy*, 707

F.Supp.2d at 612 (" 'Like a defamatory statement, each new publication of the child pornography would cause new injury to the child's reputation and emotional well-being.' " (alteration omitted) (quoting *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 249, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002))). Typi-

*mais,* 2010 WL 3033821, at *5–7 (finding proximate cause established because defendant's possession of Amy's images caused her substantial harm, "even if the conduct of others similar to that of [the defendant] caused equal or greater harm"); *United States v. Brunner,* No. 08–CR–16, 2010 WL 148433, at *2 (W.D.N.C. Jan. 12, 2010) (finding that the defendant's conduct was a proximate cause of the victims' injuries because "[d]efendant participated in an ongoing cycle of abuse and thereby contributed to the victims' mental and emotional trauma"); *United States v. Hicks,* No. 09–CR–150, 2009 WL 4110260, at *4 (E.D.Va. Nov. 24, 2009) (finding proximate cause requirement met because defendant harmed the victim).[5] However, in none of these cases was the court able to quantify what portion of the victims' harm was caused by the particular defendant's specific acts. Moreover, as discussed more fully *infra* section II.D, these courts (except the *Hardy* court) declined to order the full amount of restitution, instead choosing a far smaller

amount or otherwise attempting to apportion liability.

■ The Court respectfully disagrees with the district courts that have found proximate cause to exist in cases such as this one, involving only possession of widely distributed materials. The Government has the burden of proving what losses to Amy and Vicky were caused by Defendant's possession of the relevant materials, "separate and apart from the losses caused to the victim by the abuse and the creation of the images." *Rowe,* 2010 WL 3522257, at *5; *see also Paroline,* 672 F.Supp.2d at 791 ("[T]he Government has the burden of proving the amount of Amy's losses directly produced by [the defendant] that would not have occurred without his possession of her images."). Here, the Government has presented evidence demonstrating the total losses to Amy and Vicky and, for the purposes of this analysis, the Court accepts the quantification of those losses.[6] But, the Government has not quantified the amount of damage caused by each act of Defendant's possession of the materials.

cally, those who repeat defamatory statements are subject to liability as if they had originally published them. *See* Restatement (Second) of Torts § 578. Based on this analogy, the *Hardy* court suggested that the defendant, who had distributed, received, and possessed images of Amy, "should be just as liable as he who originally distributed the images," *Hardy,* 707 F.Supp.2d at 613, although acknowledging that the defendant's actions were not equivalent to the original production of the images, *id.* at 613 n. 13. Defamation may be a fair analogy for the type of harm caused in repeated distribution cases. However, as the *Hardy* court acknowledged, the harm caused by a distributor is not equivalent to the harm caused by the original production; thus, the Court is still unable to determine what portion of the victims' harm was caused by the innumerable persons who might have received and/or possessed the images, apart from their distribution, and as separated from their initial production. Without such evidence, the Court cannot reasonably determine

what amount of harm was proximately caused by this Defendant's conduct. Additionally, the Defendant pled guilty to receipt and possession of child pornography, not distribution, making the analogy even less applicable here.

**5.** As noted above, another district court awarded restitution without discussing whether proximate cause was required under § 2259, and thus did not consider whether the proximate causation requirement was met. *See Staples,* 2009 WL 2827204.

**6.** The Court notes that, had it determined that a restitution award was appropriate, Defendant had requested a hearing on the amount to be imposed, in order "to 'contest the evidence regarding the losses [Amy and Vicky] ha[ve] suffered as a result of [Defendant's] criminal conduct.' " (Def. Ltr. 4 (alterations omitted) (quoting *Hardy,* 707 F.Supp.2d at 616.).)

Thus, although as discussed above, Defendant's possession of their images undeniably contributed to Amy and Vicky's harm, the Court cannot determine what portion of their loss was proximately caused by Defendant's specific acts. Moreover, the Government has not alleged that Amy and Vicky were aware of this Defendant's possession before the Government advised them of such. As in *Berk*, which involved the same exact restitution requests from the same two victims as in the instant case, "[t]he losses described [ ] by the Victims are generalized and caused by the idea of their images being publicly viewed rather than caused by this particular Defendant having viewed their images." *Berk*, 666 F.Supp.2d at 191. Restitution might be appropriate if Amy or Vicky could demonstrate that the damages for which they seek compensation were proximately caused by this Defendant, such as if they had to attend an extra counseling session upon learning of Defendant's crimes. *See id.* at 192. But, based on the evidence before it, the Court cannot reasonably determine what portion of Amy or Vicky's losses were proximately caused by Defendant's specific offense; therefore, an award of restitution cannot be granted.

### D. Restitution Amount

As explained above, the Court finds that, because proximate cause was not established, the full amount of restitution will not be awarded. Yet, it cannot be disputed that Vicky and Amy have suffered "unimaginable harm" and likely will "continue to do so for the rest of [their lives]." *Rowe*, 2010 WL 3522257, at *5. Indeed, the Court is extremely sympathetic to these victims, and recognizes the difficulty of showing that their losses were proximately caused by the offenses of any particular defendant in cases such as this. But, under the statute enacted by Congress, a showing of proximate causation must be made before the Court can order any restitution.

The causation requirement notwithstanding, some courts have attempted to award Amy and Vicky some amount of damages, purportedly applying a rule of reasonableness. *See Baxter*, 394 Fed. Appx. at 379 (agreeing that there was "sufficient context to support the district court's order granting restitution in the amount of $3,000,"—the cost of one and one-half years of therapy sessions—"an amount that the [G]overnment suggested seem[ed] to be more than fair and reasonable for [the defendant] to pay" (internal quotation marks omitted)); *Aumais*, 2010 WL 3033821, at *7–9 (declining to hold the defendant liable for lost wages, because the Government could not show that the defendant's conduct caused loss to Amy separate from her original abuse, but awarding her $48,483 for future counseling fees because the defendant's actions contributed to her need for counseling); *Brunner*, 2010 WL 148433, at *4–5 (finding that, given the defendant's "relatively minor" contribution to the victims' losses and the difficulty in coordinating joint liability among many potential offenders, apportioning the damages was appropriate, and requiring the defendant to pay $7,500 to the two victims); *Scheidt*, 2010 WL 144837, at *5 (awarding $3,000 each to Vicky and Amy—an amount that is 2% of the $150,000 minimum damages amount provided in 18 U.S.C. § 2255(a) civil remedy for personal injuries caused by sexual exploitation of children, because awarding less than $3,000 would be "inconsistent with Congress's findings on the harm to children victims of child pornography"); *Hicks*, 2009 WL 4110260, at *5–6 (awarding Vicky $3,000 out of her requested $128,000, based on "the [c]ourt['s] belie[f] that at least fifty defendants will be successfully prosecuted for unlawfully pos-

sessing or receiving the Vicky series," which will ultimately compensate Vicky in full); *see also Church*, 701 F.Supp.2d at 834–35 (imposing nominal damages of $100 because restitution is mandatory under the statute [7]). *But see Hardy*, 707 F.Supp.2d at 615 (finding that as "§ 2259 does not provide for a proportionality analysis, . . . joint and several liability" for the full amount of any losses proved should be imposed); *Staples*, 2009 WL 2827204, at *4 (holding the defendant jointly and severally liable for the full amount of the victim's losses).[8]

The Court understands the desire to award these victims some restitution, but the rule of reasonableness does not permit courts to impose a random restitution amount. "To establish a record sufficient to ensure effective appellate review of its restitution orders," the Court must make specific findings of fact supporting its calculation of the full amount of the damages to a victim which were proximately caused by the defendant's offense. *Church*, 701 F.Supp.2d at 832 (internal quotation marks omitted). Indeed, in *Pearson*, the Second Circuit held that "an order of restitution for future losses may be inappropriate [where] the amount of loss is too difficult to confirm or calculate," and remanded the case precisely because "the district court did not explain how it estimated the victims' future expenses" when the district court chose to "order[ ] restitution in a substantially lower amount" than was requested by the victim. *Pearson*, 570 F.3d at 486–87 (first alteration in original) (internal quotation marks omitted).

Here, the Government has not presented any evidence as to how much of the victims' losses were caused by Defendant's specific acts or any method the Court could use to make a reasonable calculation of the damages to Amy and Vicky proximately caused by Defendant. Therefore, attempting to assign a portion of the liability to Defendant, or even awarding nominal damages, would be pure guesswork and inconsistent with the proximate cause requirement of the statute. Although mathematical precision is not required, there is "no evidence upon which the Court could reasonably calculate the measure of harm done to the victim proximately caused by the Defendant's conduct." *Church*, 701 F.Supp.2d at 832.

The Court recognizes that under the current formulation of § 2259, the Government might be unlikely to show the causation required to obtain restitution orders against defendants convicted of possession of widely distributed child pornography, but the Court is bound by the statute's requirements. Of course, Congress could further address this issue to allow victims to be appropriately compensated. For example, one court has suggested a statutory provision requiring that child pornography

---

7. The Court recognizes that the statute says that restitution is mandatory, but that does not eliminate the proximate cause requirement. Rather, the Court reads the statute as providing for mandatory restitution in any case where restitution is warranted because a defendant is found to have proximately caused the victim's losses, without regard to a defendant's ability to pay or the victim's access to other sources of compensation. *See* 18 U.S.C. § 2259(b)(4)(B). If proximate cause is not established, such as in the present case, the Court finds that the statute does not allow for an award of even nominal damages.

8. Another court deferred awarding a specific restitution amount, stating that it would not decide "whether [the] [d]efendant is to be held liable for the entire amounts claimed as losses by the victims or whether such losses should be apportioned in an appropriate manner . . . until after an evidentiary hearing and full briefing by the parties." *Monzel*, 746 F.Supp.2d at 88, 2010 WL 4261429, at *10 (internal citations omitted).

fines be paid to a national center to disburse to victims to help pay for counseling and other costs. *See Paroline,* 672 F.Supp.2d at 793 n. 12. There may be a plethora of other options Congress could consider. *See Solsbury,* 727 F.Supp.2d at 796–97 n. 1 (offering a number of other suggestions). But in the meantime, the Court is limited by the statute as it currently exists, and leaves to those responsible for policy-making to consider such options.

### III. Conclusion

For the reasons stated herein, the Government's request for an order of restitution on behalf of Amy and Vicky is denied.

SO ORDERED.