**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
April 20, 2011

No. 09-31215

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

MICHAEL WRIGHT,

Defendant-Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana

Before KING, DAVIS, and SOUTHWICK, Circuit Judges.

PER CURIAM:

Michael Wright pleaded guilty to one count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). Pursuant to 18 U.S.C. § 2259, the district court ordered Wright to pay $529,661 in restitution to one of the children, "Amy," portrayed in some of the images Wright possessed. Wright appeals this restitution order, arguing that § 2259 includes a proximate causation requirement and that the restitution order exceeds the amount of Amy's losses that his offense caused. Because we cannot discern from the record any supportable rationale for the district court's order of $529,661, we vacate the restitution order and remand for proceedings consistent with this opinion.

No. 09-31215

I.

Wright pleaded guilty to a one-count bill of information charging possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). Wright entered into a plea agreement in which he waived his right to appeal but preserved his right to appeal "any punishment in excess of the statutory maximum." The plea agreement stated that "the restitution provisions of Sections 3663 and 3663A of Title 18, United States Code will apply . . . ." The plea agreement did not make reference to the distinct provisions regarding mandatory restitution for crimes of sexual exploitation against children, 18 U.S.C. § 2259.

During the guilty plea colloquy, the district court restated the terms of the plea agreement regarding Wright's waiver of appeal, noting the exception for punishment in excess of the statutory maximum, and asked if Wright understood all of the rights he was waiving. Wright answered in the affirmative. The district court also asked Wright if he understood that "You also may be required to reimburse any victim for the amount of his or her loss under the Victim Restitution Law, if that term is applicable," and Wright again answered affirmatively.

The Factual Basis of the guilty plea indicates that law enforcement agents found 30,000 images and videos on Wright's computer showing sexually explicit images of children under 18 years of age, some less than 12 years of age. Some of the images were of identifiable children. According to the Pre-Sentence Report ("PSR"), the government was able to identify 21 children in the images, one of whom is called "Amy." The PSR attached a victim impact statement by Amy.

Amy's victim impact statement attests that Amy's uncle began sexually abusing her when Amy was four years old. Her uncle distributed explicit images of the abuse to other people and such images have somehow been traded or have

2

No. 09-31215

otherwise become available on the internet. Wright is one of hundreds, if not thousands, of individuals possessing Amy's images. Amy is now a teenager. Thousands of images of Amy's abuse have emerged in numerous child pornography cases since 1998.

Amy testifies in her statement that "Every day of my life I live in constant fear that someone will see my pictures and recognize me and that I will be humiliated all over again. It hurts me to know someone is looking at them . . . . It is hard to describe what it feels like to know that at any moment, anywhere, someone is looking at pictures of me as a little girl being abused by my uncle . . . ." Amy's psychologist, Dr. Silberg, submitted a report regarding the psychological trauma Amy experiences because of the images of her abuse being traded and viewed on the internet. Dr. Silberg determined that each discovery that another defendant viewed her images "re-traumatizes her again."

Upon request of Amy's law firm and based in part on Dr. Silberg's report, the PSR recommended restitution to Amy in the amount of $3,367,854. This figure is based on Amy's total losses. These losses include the total costs of her future psychological counseling, $512,681, based on an estimate that Amy will need counseling once weekly for the rest of her life, and Amy's estimated lost future income of $2,855,173.

Wright filed a motion opposing restitution for lack of evidence that Amy's losses were caused by his offense. Wright argued that § 2259 requires a showing of proximate causation and that no evidence indicated that Wright's individual offense caused Amy's psychological distress. Wright pointed out that he did not come into possession of the images until many years after the abuse occurred, and that no evidence suggests that Amy was ever aware that he personally possessed or viewed the images.

The government responded, attaching Amy's firm's supplemental memoranda and expert reports. The government asserted various legal theories

3

No. 09-31215

regarding a broad view of causation under § 2259. The government argued that it was within the court's discretion to award restitution for Amy's entire set of damages.

The district court overruled Wright's objection to restitution based on lack of causation, but did not elaborate on its reasoning, simply stating that upon consideration of the issue "the court concludes that some award of restitution is appropriate . . . ." The court ordered Wright to pay Amy $529,661 in restitution, basing this amount on the total value of Amy's anticipated future counseling expenses and expert services in tabulating the expenses as indicated in the PSR and attached reports. The district court stipulated that Wright's duty to pay restitution would be "concurrent" with any other restitution orders of other defendants payable to this victim. The district court ordered that Wright's obligation to pay begin immediately, but assuming that the obligation has not been satisfied upon his release from prison (after his 96-month sentence), ordered that Wright should pay $200 per month thereafter.

## II.

The legality of a restitution order is reviewed de novo. *United States v. Arledge*, 553 F.3d 881, 897 (5th Cir. 2008). If a restitution order is legally permitted, the amount of the order is reviewed for abuse of discretion. *Id*.; *United States v. Ollison*, 555 F.3d 152, 164 (5th Cir. 2009). The validity of an appeal waiver is reviewed de novo. *United States v. Burns*, 433 F.3d 442, 445 (5th Cir. 2005).

## III.

This appeal presents issues related to the amount of restitution that a district court may order a defendant convicted of possessing child pornography to pay to one of the children depicted in the images. Similar issues have been raised in a large number of federal district and circuit courts in recent years. Many of these cases involve Amy, the same victim in this case. A panel decision

of this court was very recently issued in a case raising similar, overlapping questions with regard to a different defendant convicted of possessing images of Amy. *In re Amy*, No. 09-41238, slip op. (5th Cir. Mar. 22, 2011).

Like the defendant in *In re Amy* and those in other similar cases, Wright argues that § 2259 requires a causal connection between his offense and the victim's damages or recoverable losses. He asserts that his offense conduct did not cause Amy's losses at all, much less in the amount of $529,661. In response, the government concedes on appeal that § 2259 does contain some kind of causation requirement. The government contends generally, however, that this requirement of § 2259 is to be liberally construed in favor of victim restitution and that the district court has wide discretion to order restitution.

As explained further below, the recent *In re Amy* panel opinion rejected the causation arguments made by Wright, holding that § 2259 does not limit Amy's recoverable losses to those proximately caused by a defendant's offense. *See In re Amy*, No. 09-41238, slip op. at 12. We evaluate Wright's appeal under this precedent.

## A.

We first consider the government's argument that Wright's appeal is barred by his appeal waiver. "A defendant may waive his statutory right to appeal his sentence if the waiver is knowing and voluntary." *United States v. Bond*, 414 F.3d 542, 544 (5th Cir. 2005). Wright's waiver does not meet this standard because the record suggests that at the time he entered into the plea agreement, Wright was not aware that he might be ordered to pay a large restitution payment that possibly exceeds the losses to Amy proximately caused by his conduct. Wright's plea agreement referred to the general restitution provisions of 18 U.S.C. §§ 3663 and 3663A, which both indisputably include

No. 09-31215

proximate causation as a condition of restitution.[1]  Additionally, Wright's plea agreement reserved the right to appeal "any punishment in excess of the statutory maximum."  Generally, a restitution order under § 3663 that exceeds the losses caused by the defendant's offense exceeds the statutory maximum. *See United States v. Norris*, 217 F.3d 262, 271-72 (5th Cir. 2000) (vacating a § 3663 restitution award  for lack of evidence of causation); *see also United States v. Broughton-Jones*, 71 F.3d 1143, 1146 (4th Cir.  1995) (vacating a § 3663 restitution order, despite an appeal waiver, because the order was not limited to losses caused by the defendant and thus exceeded the statutory maximum). In contrast, the *In re Amy* panel only recently interpreted § 2259 as not including the same proximate causation requirement of §§ 3663 and 3663A, long after Wright entered into the plea agreement.  Thus, Wright did not knowingly waive his right to appeal a restitution order that is unlimited by the principle of proximate causation.

This conclusion is further supported by the fact that neither Wright's plea agreement nor any plea-related documents refer to § 2259.  The district judge's reference during the guilty plea colloquy to "the Victim Restitution Law" is vague and could have been understood as a reference to § 3663 or § 3663A as cited in the plea agreement, both of which incorporate a proximate causation standard.  We are persuaded by these facts that Wright was unaware of the potential scope of the district court's restitution order.   Under these circumstances, we conclude that Wright's waiver of appeal regarding this restitution order was not knowing or voluntary.

B.

We next turn to the language of § 2259 and to Wright's argument that this language requires a causal connection between his offense conduct and Amy's

---

[1]  Section 3663 governs discretionary restitution and § 3663A governs mandatory restitution for certain crimes.  These statutes are discussed further in Part IV. of this opinion.

recoverable losses.  Section 2259(a) states that the court "shall order restitution for any offense under this chapter."  Section 2259(b)(1) states that the order of restitution shall direct the defendant to pay "the full amount of the victim's losses. . ." and § 2259(b)(3) defines these losses as follows:

> "the term 'full amount of the victim's losses' includes any costs incurred by the victim for –
> (A) medical services relating to physical, psychiatric, or psychological care;
> (B) physical and occupational therapy or rehabilitation;
> (C) necessary transportation, temporary housing, and child care expenses;
> (D) lost income;
> (E) attorney's fees, as well as other costs incurred; and
> (F) any other losses suffered by the victim *as a proximate result of the offense*."

(emphasis added).

Wright argues that this statutory language requires a finding of proximate causation between his offense conduct and the amount of Amy's losses that he is ordered to pay.  In the recent *In re Amy* decision, however, the court rejected this very same argument.  *In re Amy*, No. 09-41238, slip op. at 12-13.  The *In re Amy* panel reasoned that Amy was a "victim" of the defendant's crime of possessing her images pursuant to the definition of "victim" in § 2259(c): "For purposes of this section, the term 'victim' means that the individual harmed as a result of a commission of a crime under this chapter . . . ." *Id*. at 16.

Thus, based on this definition of "victim," the *In re Amy* panel read § 2259 as having a "built-in" causation requirement and held that no further proximate causation requirement may be inferred from the remainder of § 2259's language. *Id*.  The opinion specifically rejected the argument that the "as a proximate result of the offense" language in § 2259(b)(3)(F) modifies the previous five sub-categories of losses in subsections (A) through (E).  *Id*. at 12.  The court limited the effect of that clause to the "catchall" provision of  subsection (F) itself.  *Id*.

No. 09-31215

("The structure and language of § 2259(b)(3) impose a proximate causation requirement only on miscellaneous "other losses" for which a victim seeks restitution."). Therefore, the court held that the district court erred when it failed to order any restitution against the defendant on the grounds that "the government failed to prove 'what losses, if any, were proximately caused by Paroline's possession of Amy's two pornographic images.'" *Id.* (quoting *United States v. Paroline*, 672 F. Supp. 2d 781, 783 (E.D. Tex. 2009)).[2]

## C.

Applying the authority of *In re Amy* to Wright's appeal, we conclude that Amy is eligible for restitution as a "victim" of Wright's crime of possessing images of her abuse pursuant to § 2259(c) and that the other provisions of § 2259, including § 2259(b)(3)(F), do not require additional proof of a causal connection between Wright's offense conduct and Amy's recoverable losses. With this understanding, we review the district court's award for abuse of discretion and for any legal error.

The district court stated that it arrived at the amount of $529,661 by adding the PSR's estimate of Amy's future counseling costs for the rest of her life, $512,681, to the value of Amy's expert witness fees. However, the district court gave no reasons why Wright should be required to pay this amount but not, for instance, also be required to pay for all or part of Amy's projected lost income, $2,855,173. The record does not indicate why the court reduced the government's requested award of $3,367,854 or how the court settled on the amount it chose to award. In sum, the district court did not explain its

---

[2] We note that other circuit courts have not adopted the view of § 2259 articulated by *In re Amy*. *See United States v. Monzel*, No. 11-2008, slip op. at 12-17 (D.C. Cir. April 19, 2011); *United States v. McDaniel*, 631 F.3d 1204, 1209 (11th Cir. 2011); *United States v. Laney*, 189 F.3d 954, 965 (9th Cir. 1999); *United States v. Crandon*, 173 F.3d 122, 126 (3d Cir. 1999). This is discussed more thoroughly in the special concurrence to this opinion.

reasoning and the parties as well as this court are completely in the dark on why the district court settled on the amount of $529,661.

The government urged at oral argument (but not in its brief) that we should affirm this award based on the theory of joint and several liability. The *In re Amy* opinion approved basing an award on joint and several liability under the general restitution enforcement provisions of 18 U.S.C. § 3664, incorporated by § 2259(b)(2).[3] Nevertheless, we cannot affirm the district court's $529,661 restitution order on this basis because it is unclear if the district court intended the order to be joint and several.[4] Even if we assume that the district court intended the order to be joint and several, the district court articulated no reason for holding Wright jointly and severally liable for Amy's future psychological costs. Also, the district court's award of restitution for the victim's counseling costs and not for other losses belies the government's argument that the district court intended to hold Wright jointly and severally liable under §§ 2259 and 3664 for all of Amy's losses. Therefore, on this record, we decline to affirm the restitution order on the basis of joint and several liability.

We also cannot affirm the order on the basis that it represents the "fraction" of Amy's losses "attributable" to Wright.[5] The district court did not explain why it attributed the full amount of Amy's future counseling costs (to the

---

[3] *See In re Amy*, No. 09-41238, slip op. at 17 (citing § 3664(m)(1)(A)(ii) for the proposition that a district court may enforce a restitution order "by all other available and reasonable means" and, thus, by joint and several liability).

[4] The district court stated that the order shall be "concurrent" with orders against other defendants payable to the same victim. The court did not use the words "joint and several" or cite § 3664. Although the government asserted at oral argument that the word "concurrent" referred to joint and several liability, in briefing the government disputed this interpretation of the court's order.

[5] *See In re Amy*, No. 09-41238, slip op. at 18 (stating that the district court may "quantify the amount of restitution to which Amy is entitled or the *fraction attributable* to [the defendant] Paroline . . . .") (emphasis added).

exclusion of other losses) to Wright, who was but one of hundreds if not thousands of individuals possessing Amy's images. This is not a principled method of determining the fraction of losses attributable to Wright in a manner that is subject to meaningful review. The court must give some rationale for its order.[6]

In sum, although we agree with the government that the district court has wide discretion in fashioning restitution orders, this discretion is not unlimited and must be reviewed for abuse. Moreover, if there is "[a]ny dispute as to the proper amount or type of restitution" the court is obligated to resolve that dispute "by the preponderance of the evidence." 18 U.S.C. § 3664(e). We conclude, therefore, that the district court's failure to give a reasoned analysis of how it arrived at its award in a manner that allows for effective appellate review requires that we vacate the order and remand for reconsideration.[7]

On remand, the district court has two basic options under §§ 2259 and 3364, as well as the *In re Amy* decision. The district court may attempt to craft a joint and several restitution order that conforms to the generally recognized requirements of joint and several liability, as held by *In re Amy*. Alternatively, the district court may attempt to determine the "fraction" of Amy's losses "attributable" to Wright, consistent with the *In re Amy* decision. Under any circumstances, the district court must set forth its reasoning, as supported by

---

[6] The district court's lack of reasoning for attributing this amount of Amy's losses to Wright is illustrated by looking to other cases. The Eleventh and Ninth Circuits have affirmed restitution orders against similar defendants in the amounts of $12,700 and $3,000, respectively. *See McDaniel*, 631 F.3d at 1209; *United States v. Baxter*, 394 F. App'x 377, 378-79 (9th Cir. Sept. 1, 2010).

[7] *See generally United States v. Hai Waknine*, 543 F.3d 546, 556 (9th Cir. 2008) ("We conclude that § 3664 recognizes that specific findings of fact are necessary at times and contemplates that the district court will set forth an explanation of its reasoning, supported by the record, when a dispute arises as to the proper amount of restitution.").

No. 09-31215

the record and the applicable authorities, so that the order may be subject to effective appellate review.

The restitution order is VACATED and the case REMANDED.

No. 09-31215

W. EUGENE DAVIS, Circuit Judge, specially concurring:

I write separately to express my disagreement with the recent holding by the *In re Amy* panel that § 2259 does not limit the victim's recoverable losses to those proximately caused by the defendant's offense and to urge the court to grant *en banc* review of that decision.

I.

At bottom, this is a statutory interpretation case and I begin with a consideration of the structure and language of the statutes at issue. Section 2259 specifically governs mandatory restitution awards for crimes related to the sexual exploitation and other abuse of children. Section 2259(a) states that the court "shall order restitution for any offense under this chapter." Section 2259(b)(3) states that the victim's losses are defined as those suffered by the victim "as a proximate result of the offense." Again, the full text of § 2259(b)(3) is as follows:

> "the term 'full amount of the victim's losses' includes any costs incurred by the victim for –
> (A) medical services relating to physical, psychiatric, or psychological care;
> (B) physical and occupational therapy or rehabilitation;
> (C) necessary transportation, temporary housing, and child care expenses;
> (D) lost income;
> (E) attorney's fees, as well as other costs incurred; and
> (F) any other losses suffered by the victim *as a proximate result of the offense*."

(emphasis added).

I interpret this statutory list according to the fundamental canon of statutory construction established by the Supreme Court in *Porto Rico Railway, Light & Power Co. v. Mor*, 253 U.S. 345, 348 (1920), in which the Court held that "[w]hen several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all." Applying this cardinal

12

rule of statutory interpretation, I conclude that the clause "as a proximate result of the offense" applies equally to the previous five subcategories of losses, (A) through (E), as to the "other losses" described in subsection (F).[1]

This interpretation of § 2259(b)(3) is further supported by the procedures for issuing and enforcing restitution orders. Section 2259(b)(2) expressly incorporates the procedures of 18 U.S.C. § 3664, stating that "[a]n order of restitution under this section shall be issued and enforced in accordance with section 3664 in same manner as an order under section 3663A."[2] Section 3664(e) states unequivocally that "[t]he burden of demonstrating the *amount of the loss* sustained by a victim *as a result of the offense* shall be on the attorney for the Government." (emphasis added).

This language from § 2259(b)(3) and § 3664(e) is consistent with the definition of "victim" in § 2259(c), which is defined to mean "the individual harmed *as a result* of a commission of crime under this chapter . . . ." (emphasis added). The definition of "victim" reinforces the proximate causation requirement of §§ 2259(b)(3) and 3664(e).

In contrast, the *In re Amy* panel determined that the definition of victim in § 2259(c) is the statute's *only* "built-in causation requirement." *See In re Amy*, No. 09-41238, slip op. at 16. The panel concluded that the clause "as a proximate result of the offense" in § 2259(b)(3) modifies only the "catchall" provision of subsection (F) and not the previous five sub-categories of losses. *Id.* at 12.

---

[1] As explained further below, every circuit court and virtually every district court construing § 2259(b)(3) agrees with this reading of the statute in accordance with the rule of *Porto Rico Railway*. *See, e.g., McDaniel*, 631 F.3d at 1209 ("The phrase 'as a proximate result of the offense' is equally applicable to medical costs, lost income, and attorneys' fees as it is to 'any other losses.'") (citing *Porto Rico Railway*, 253 U.S. at 348).

[2] Section 3663A is a more general mandatory restitution statute that was enacted by the Mandatory Victim Restitution Act. *See infra* n. 4.

*In re Amy's* reading of § 2259(b)(3) is patently inconsistent with the rule of statutory interpretation announced in *Porto Rico Railway* which makes it clear that the clause is equally applicable to all categories of loss.[3]  Furthermore, this interpretation of § 2259(b)(3) is directly contrary to the enforcement procedures of § 3664(e) placing the burden of demonstrating the "amount of the loss" sustained by a victim "as a result of the offense" on the government.  *In re Amy* is inexplicably silent about § 3664(e) and its role of supporting § 2259(b)(3)'s requirement of proximate causation.

Thus, the *In re Amy* panel erred in concluding that §2259's *only* causation requirement is found in the statute's definition of "victim."  *In re Amy* supports this conclusion by comparing § 2259(c)'s definition of victim with the definition in the more general mandatory restitution statute, 18 U.S.C. §3663A, which defines a victim "a person *directly and proximately harmed* as a result of a commission of an offense . . . ."  18 U.S.C. § 3663A(a)(2) (emphasis added).  It does not follow, however, from this different definition of "victim" that Congress "abandoned" the proximate causation requirement in § 2259.  *See In re Amy*, No. 09-41238, slip op. at 13 ("Comparing these statutes reveals that Congress abandoned the proximate causation language . . . .").  The procedures of § 3664(e)—which apply equally to restitution orders under both §§ 2259 and 3663A—clearly contemplate a proximate causation requirement, which is consistent with the express language in both §§ 2259 and 3663A.  Thus, Congress did not abandon the causation requirement in § 2259.

Additionally, *In re Amy* is simply incorrect in its assertion that "the evolution in victims' rights statutes demonstrates Congress's choice to abandon

---

[3] I am not persuaded by *In re Amy's* attempt to distinguish the statute in *Porto Rico Railway* on the basis that the sub-categories of § 2259(b)(3) are separated by semi-colons rather than commas.  *See In re Amy*, No. 09-41238, slip op. at 14.  Either punctuation device is an acceptable method of separating clauses.  *See* Bryan A. Garner, THE REDBOOK: A MANUAL ON LEGAL STYLE, 1-15 (2d. ed. 2006).

No. 09-31215

a global requirement of proximate causation." *In re Amy*, No. 09-41238, slip op. at 13. The panel based this conclusion on the erroneous determination that comparing §3663A's definition of "victim" to § 2259's definition of the same word "enacted 14 years later" reveals Congress's evolution toward abandoning proximate causation. *Id.* at 12-13. In fact, § 2259's definition of "victim" was enacted two years *before* § 3663A's definition of that term, not 14 years after.[4] Therefore, if anything, the definition of "victim" in § 3363A evolved toward (and not away from) a firm stance of requiring a showing of proximate causation.[5]

I completely agree with the *In re Amy* panel that Amy is a "victim" of the crime of possessing images of her abuse pursuant to the definition of "victim" in § 2259(c) under the reasoning of *New York v. Ferber*, 458 U.S. 747, 759, 102 S. Ct. 3348, 3355 (1982) and *United States v. Norris*, 159 F.3d 926, 929 (5th Cir. 1998), which recognized the serious harm a child suffers by the distribution and possession of images depicting her abuse. Every other federal court addressing this issue has followed the reasoning of *Ferber* and *Norris* in holding that Amy and similar children are "victims." *See, e.g., McDaniel*, 631 F.3d at 1208 ("Like

---

[4] A timeline of federal restitution statutes follows: (1) Congress passed the Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. 97-291, 1982 S. 2420. The VWPA enacted the discretionary restitution provisions currently codified in § 3663, but did not contain §3663's current definition of "victim" or the mandatory restitution provisions currently codified in § 3663A; (2) Congress passed the Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, 108 Stat. 1796, 1907-1910, which enacted § 2259, including the current definition of "victim" in § 2259(c); (3) Congress passed the Mandatory Victim Restitution Act ("MVRA") as part of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214, which amended existing federal restitution laws and procedures. The MVRA added § 3663A to the United States Code and established the current definition of "victim" in §§ 3663A(a)(2) and 3663(a)(2) as "a person directly and proximately harmed as a result of a commission of an offense . . . ." 110 Stat. 1228, 1230.

[5] This conclusion is further supported by the Crime Victims' Rights Act ("CVRA"), part of the Justice for All Act of 2004, Pub. L. 108-405, 118 Stat. 2260, which reiterates that crime victims have "[t]he right to full and timely restitution as provided in law." 18 U.S.C. § 3771 (a)(6). The CVRA provides victims with the mandamus remedy that *In re Amy* granted. *Id.* § 3771(d). Like §§ 3663 and 3663A, the CVRA defines a victim as "a person directly and proximately harmed as a result of the commission of a Federal offense . . . ." *Id.* § 3771(e).

the producers and distributors of child pornography, the possessors of child pornography victimize the children depicted within.") (citing *Ferber*, 458 U.S. at 759). As explained further below, all of the circuit and district court cases that have dealt with this issue have started from the premise that these children are victims. This is usually not a seriously contested issue and is a given. The difficult issue in all of these cases is determining the amount of the restitution award that should properly be assessed against the single defendant before the court when multiple images—sometimes thousands—have been possessed and distributed to many individuals. This is when the statute's plain language requiring a showing of proximate cause between the defendant's conduct and the award is important.

## II.

*In re Amy's* holding that § 2259 does not limit the victim's recoverable losses to those proximately caused by defendant's offense is at odds with the conclusion of every other circuit court considering this issue. In a very similar case involving restitution ordered against a defendant convicted of possessing child pornography, the Eleventh Circuit recently rejected the interpretation of § 2259(b)(3) adopted by *In re Amy*. *McDaniel*, 631 F.3d at 1209. The Eleventh Circuit held that "[t]he phrase 'as a proximate result of the offense' is equally applicable to medical costs, lost income, and attorneys' fees as it is to 'any other losses.'" *Id*. Accordingly, although the court held that the child, "Vicky," was a "victim" of the defendant's crime, the court proceeded to evaluate the district court's restitution order under § 2259(b)(3)'s requirement limiting the victim's recoverable losses to those proximately caused by the defendant's offense. *Id*. Thus, the Eleventh Circuit's reading of § 2259 is entirely consistent with my reading and is contrary to *In re Amy's* interpretation.

The Eleventh Circuit affirmed the district court's restitution order of $12,700, which constituted only part of Vicky's overall losses, in light of §

2259(b)(3)'s proximate causation requirement. *Id*. The court affirmed the award on the basis that the government notified Vicky each time a defendant possessing her images was arrested and that according to the testimony of Vicky's psychologist, each of these notifications added to the "slow acid drip" of Vicky's ongoing emotional distress. *McDaniel*, 631 F.3d at 1209. Thus, the court held that the district court "did not clearly err in finding that McDaniel's possession *proximately caused* Vicky's losses." *Id*. (emphasis added).

The Eleventh Circuit cited the Ninth Circuit's holding in *United States v. Laney*, 189 F.3d 954, 965 (9th Cir. 1999), a case involving a defendant convicted of conspiring to engage in the sexual exploitation of children. The Ninth Circuit held that § 2259 requires "a causal connection between the offense of conviction and the victim's harm." *Id*. at 965. The Ninth Circuit also recently affirmed a restitution order in the amount of $3,000 against a defendant convicted of possessing images of Vicky on the basis that "[t]he United States met its burden of establishing *proximate cause* by showing how Vicky's harm was generally foreseeable to casual users of child pornography like Baxter." *United v. Baxter*, 394 F. App'x 377, 378-79 (9th Cir. Sept. 1, 2010) (emphasis added). *Baxter* affirmed the district court's grant of the government's request for a $3,000 award based on the government's estimate that this amount would cover 18 sessions, or one and one-half years of therapy for Vicky, at one session per month. *Id*. The court determined that this amount represented a fair and reasonable estimate of the amount of Vicky's harm caused by the defendant. *Id*.

These opinions are consistent with the Third Circuit's opinion in *United States v. Crandon*, 173 F.3d 122, 126 (3d Cir. 1999), in which the court affirmed a restitution order against a defendant convicted of receiving child pornography. *Id*. at 126. The district court had concluded "by a preponderance of the evidence that Crandon's conduct was the proximate cause of the victim's losses." *Id*. Based on the defendant's conduct, which the evidence showed had exacerbated

the victim's harm and constituted a "substantial factor in causing the ultimate loss," the Third Circuit concluded that "the district court did not abuse its discretion in concluding that Crandon's conduct was the *proximate cause* of the victim's losses." *Id.* (emphasis added).

The *In re Amy* opinion does not discuss this substantial circuit authority interpreting § 2259 to require a showing of proximate causation between the defendant's conduct and the victim's recoverable losses. Additionally, the *In re Amy* opinion fails to mention the large number of district court cases that have recently addressed this issue in the context of child pornography possession convictions. Almost all of these cases involve Amy or Vicky. These courts all agree that Amy and Vicky are "victims" of the crime of possessing images portraying their abuse under the definition of "victim" in § 2259 and reasoning of *Ferber,* 458 U.S. at 759, 102 S. Ct. at 335, and *Norris,* 159 F.3d at 929. However, these courts also recognize that "almost every court to have considered causation under § 2259 has found the 'proximate result' language in the catchall provision to apply equally to the other enumerated categories of loss, and therefore has held that § 2259 requires a showing of proximate cause." *United States v. Chow,* No. 09-CR-165, 2010 U.S. Dist. LEXIS 140506 (S.D.N.Y. Nov. 22, 2010). Thus, virtually every district court addressing the topic has concluded that § 2259 includes a distinct requirement that the victim's recoverable losses are limited to those proximately caused by the defendant's offense. *See, e.g., United States v. Hardy,* 707 F. Supp. 2d 597, 610 (W.D. Pa. 2010)("Given the unanimity of the Circuits that have addressed the question, the language of the statute, and the legislative history of its amendments, this Court finds that 18 U.S.C. § 2259 does require that a victim's losses be proximately caused by the criminal acts of the defendant for restitution to be awarded.").[6]

---

[6] A representative list of additional cases follows: *United States v. Church*, 701 F. Supp. 2d 814, 825-26 (W.D. Va. April 5, 2010); *United States v. Berk*, 666 F. Supp. 2d 182 (D. Me.

No. 09-31215

These district courts have come to different conclusions regarding the amount of restitution owed in light of § 2259's proximate causation requirement. Some of these courts have ordered no restitution, some have ordered joint and several liability for the total amount of the victim's losses, and some courts have ordered smaller awards in the general range of $3,000 to $5,000.[7] The one point that all of these numerous opinions agree on is that the restitution order must be based on evidence of a causal connection between the defendant's offense and the victim's losses. These opinions do not rely solely on § 2259(c)'s definition of "victim" to establish the causal requirements of § 2259. I can identify no opinion of a district or circuit court other than *In re Amy* expressly holding that § 2259 does not limit the victim's recoverable losses to those proximately caused by the defendant's offense.

III.

In this case, we should direct the district court to make findings regarding the causal connection between Wright's offense and any of Amy's losses that the

2009); *United States v. Rowe*, No. 1:09-CR-80, 2010 U.S. Dist LEXIS 98458 (W.D.N.C. Sept. 7, 2010); *United States v. Aumais*, No. 08-CR-711, 2010 U.S. Dist. LEXIS 78407 (N.D.N.Y. Jan. 13, 2010); *United States v. Brunner*, No. 5:08-CR-16, 2010 U.S. Dist. LEXIS 8285 (W.D.N.C. Jan. 12, 2010); *United States v. Hicks*, No. 1:09-CR-150, 2009 U.S. Dist. LEXIS 110253 (E.D. Va. Nov. 24, 2009); *United States v. Ferenci,* No. 1:08-cr-0414 AWI, 2009 U.S. Dist. LEXIS 80339 (E.D. Cal. Aug. 19, 2009); *United States v. Renga*, 2009 U.S. Dist. LEXIS 78144 (E.C. Cal. Aug. 18, 2009). I am aware of only one district court that has ordered restitution against a defendant possessing Amy's or Vicky's images without discussing proximate causation. *United States v. Staples*, No. 09-CR-14017, 2009 U.S. Dist. LEXIS 81648 (S.D. Fla. Sept. 2, 2009) (ordering joint and several restitution for the full amount of Amy's losses).

[7]   One of these courts relied on 18 U.S.C. § 3664(h) as authority for ordering joint and several restitution against a defendant possessing and distributing Amy's images. *See Hardy*, 707 F. Supp. 2d at 614-15. A number of these courts have relied on the apportionment provisions of § 3664(h) as authority for issuing smaller or partial awards. The full text of § 3664(h) is as follows: "If the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant."

19

No. 09-31215

court orders Wright to pay pursuant to the requirements of § 2259. If the court finds evidence that Wright's possession of the images was a proximate cause of Amy's losses, the court has wide discretion to craft a reasonable restitution order reflecting the losses caused by Wright. The district court's order need not approach "mathematical precision." *See United States v. Doe*, 488 F.3d 1154, 1160 (9th Cir. 2007). The district court could apportion Wright's share of Amy's total losses or render judgment under the joint and several liability provisions of § 3664(h) utilized in some of the above-cited cases. Whatever approach the district court chooses, the court should explain the basis of its award and the order should be constrained by the principle of proximate causation.[8]

## IV.

Finally, I note that the District of Columbia Circuit very recently issued a thorough, well-reasoned opinion that is consistent with this special

---

[8] *In re Amy* cited the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9607(a) ("CERCLA") as an example of joint and several liability. *In re Amy*, No. 09-41238, slip op. at 17. The Supreme Court has recognized that the scope of joint and several liability under CERCLA is to be determined by the "principles of common law." *Burlington Northern & Santa Fe Railway Co. v. United States*, 129 S. Ct. 1870, 1880-81 (2009). Thus, the Court has held that CERCLA joint and several liability is limited by the following general causation principles:

> [W]hen two or more persons acting independently cause a distinct or single harm for which there is a reasonable basis for division according to the contribution of each, each is subject to liability only for the portion of the total harm that he has himself caused. Restatement (Second) of Torts §§ 433, 881; Prosser, Law of Torts, pp 313-314 (4th ed. 1971). But where two or more persons cause a single, indivisible harm, each is subject to liability for the entire harm. Restatement (Second) of Torts, § 875; Prosser, at 315-16. In other words, apportionment is proper when there is a reasonable basis for determining the contribution of each cause to a single harm. Restatement (Second of Torts) § 433A(1)(b), p. 434 (1963-64).

*Burlington Northern*, 129 S. Ct. at 1881 (internal citation omitted). These same general causation principles should apply to joint and several restitution orders under § 2259.

No. 09-31215

concurrence.  *See  United States v. Monzel*, No. 11-3008, slip op. (D.C. Cir. April 19, 2011).

For all of the foregoing reasons, this court should follow every other circuit court and virtually every district court considering this issue in holding that § 2259 limits recoverable losses to those proximately caused by the defendant's offense of conviction.  Thus, I recommend that this case be consolidated with *In re Amy* and reheard *en banc.*

I have been authorized to state that Judges KING and SOUTHWICK join in this special concurrence.

21